**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kevin Patrick SZABO, Defendant–
Appellant.**

Nos. 97–3603, 97–3604, 97–3605.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1998.

Decided June 9, 1998.

Bradley W. Murphy (argued), Thomas A. Keith, Office of the United States Attorney, Peoria, IL, for Plaintiff-Appellee.

David B. Mote (argued), Office of the Federal Public Defender, Springfield, IL, Richard H. Parsons, Office of the Public Defender, Peoria, IL, for Defendant–Appellant.

Before BAUER, FLAUM and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Kevin Szabo challenges the district court's upward departure in sentencing him on nine bank robbery convictions. Because we conclude that the challenged departure was based on a misinterpretation of the applica-

ble sentencing guideline, we remand for resentencing in Nos. 97–3604 and 97–3605. We dismiss No. 97–3603, however, because the defendant waived his right to appeal his sentence in that case.

Szabo was charged with four counts of bank robbery in the Central District of Illinois (No. 97–3603), three counts in the Southern District of Illinois (No. 97–3604), and two additional counts in the Eastern District of Missouri (No. 97–3605). Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, the Southern District and Eastern District cases were transferred for disposition to Judge McDade in the Central District. Szabo pleaded guilty to all nine charged offenses. The plea in the Central District case was pursuant to a plea agreement in which Szabo waived his right to appeal his sentence. Szabo did not have a plea agreement in the Southern District case or the Eastern District case.

The district court sentenced Szabo pursuant to U.S.S.G. § 3D1.4, which provides the method for calculating the combined offense level when a defendant is convicted of multiple counts. Two of the robberies from the Central District had adjusted offense levels of 25; each of the other seven robberies had an adjusted offense level of 24. Thus, as mandated by § 3D1.4, the district court used the highest of these adjusted offense levels (*i.e.*, level 25) and added five additional levels because the total number of robbery counts was "more than 5." [1] This resulted in a combined offense level of 30. From there, the district court decreased the offense level by three because of Szabo's acceptance of responsibility, *see* U.S.S.G. § 3E1.1, resulting in a total offense level of 27.

The district court then considered the issue of upward and downward departures. The court departed upward by four levels because it found that the combined offense level calculated under § 3D1.4 understated the seriousness of Szabo's offenses. The court then departed downward by three levels under § 5K1.1 to reflect the substantial assistance that Szabo provided to law enforcement authorities. These departures yielded a final offense level of 28 which, in light of Szabo's criminal history category, mandated a sentencing range of 78 to 97 months imprisonment. The district court sentenced Szabo to 97 months imprisonment in each of the three cases, with the sentences to run concurrently.

Szabo's challenge on appeal concerns only the four-level upward departure. The district court believed that a departure was warranted because the mandatory five-level adjustment in calculating the combined offense level under § 3D1.4 understated the seriousness of Szabo's multiple offenses. *See* U.S.S.G. § 3D1.4 comment. (backg'd.) ("Inasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units."). As described above, § 3D1.4 provides for an upward adjustment of five levels when, as in this case, the number of additional robbery counts is "more than 5." The district court chose to depart upward by four levels, stating that "this is equatable with the fact that there's nine robberies, only five of which were given credit for in computing the offense level, so there's some relationship there."

---

1. Section 3D1.4 provides as follows:

The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
| --- | --- |
| 1 | none |
| 1<< | add 1 level |
| 2 | add 2 levels |
| 2 << - 3 | add 3 levels |
| 3 << - 5 | add 4 levels |
| More than 5 | add 5 levels |

In determining the number of Units for purposes of this section:
(a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious.

U.S.S.G. § 3D1.4.

Because each of Szabo's nine robbery offenses counts as a separate Group, see U.S.S.G. § 3D1.5, illus. 1, the combined offense level in his case was based on nine units, which indicates an increase of 5 levels.

■ The district court's reasoning in choosing to depart upward by four levels was flawed. As we held in *United States v. Dawson*, 1 F.3d 457, 462 (7th Cir.1993), the adjustment under § 3D1.4 for "*more* than 5" additional counts encompasses the sixth charged offense. Thus, the district court's conclusion that § 3D1.4 credited only five of Szabo's nine robberies was erroneous. Although Szabo did not make any objection at sentencing to this computation, and we therefore review the district court's decision for plain error, *see United States v. Wallace*, 32 F.3d 1171, 1174 (7th Cir.1994), we are forced to conclude that the misapplication of the sentencing guidelines by the district court requires us to remand for resentencing. *See United States v. Maggi*, 44 F.3d 478, 484 (7th Cir.1995). Because the court's choice of a four-level upward departure was premised on the mistaken belief that § 3D1.4 failed to account for four of Szabo's offenses, Szabo's sentence reflects a misapplication of the guidelines.

■ Under the plain error standard of review, the defendant bears the burden of showing that he suffered prejudice in his sentence due to the court's erroneous interpretation. *United States v. Schaefer*, 107 F.3d 1280, 1286 (7th Cir.1997), *cert. denied*, — U.S. ——, 118 S.Ct. 701, 139 L.Ed.2d 645 (1998). The Government concedes that the district court's upward departure was based on an understanding of § 3D1.4 that "may have been incorrect," but it contends that there is no prejudice because the sentence is reasonable overall. In the Government's view, the district court tailored the magnitude of its upward departure to take into account its subsequent three-level downward departure under § 5K.1. In other words, the district court reasonably decided that a final offense level of 28 was fair, and it manipulated its upward and downward departures to arrive at this result.

While recognizing that this position has an obvious equitable appeal, we believe that, given the reasons put forth by the district court in the sentencing proceeding, that court would not have imposed the same sentence if it had accurately interpreted § 3D1.4. The court explicitly based the magnitude of its four-level departure on the mistaken belief that § 3D1.4 failed to account for four of Szabo's bank robberies. If anything, use of this one-to-one correlation suggests that the court would have departed upward by only three levels if it had correctly interpreted § 3D1.4 to account for all but three of Szabo's nine offenses.[2] An upward departure of lesser magnitude would have affected the length of Szabo's sentence. The district court sentenced Szabo to 97 months, which is the maximum under the guideline range applied by the court; all else being equal, a smaller upward departure would have placed Szabo in a lower guideline range for which 97 months would not have been a possibility.

Szabo's waiver of his right to appeal his sentence in the Central District case might suggest another potential difficulty in Szabo's effort to show prejudice. Because Szabo's plea agreement waived his right to appeal his sentence in the Central District case, and Szabo does not contest the fact that his waiver was knowing and voluntary, the 97-month term of imprisonment ordered in that case must stand. *See United States v. Ogden*, 102 F.3d 887, 889 (7th Cir.1996).[3] If, on remand, the district court enters shorter sentences in the Southern District and Eastern District cases, Szabo might still end up serving 97 months because the Central District sentence remains intact. However, as counsel pointed out at oral argument, reduced sentences in the Southern District and Eastern District cases could benefit Szabo in the future if the

---

2. Szabo also argues that the structure of § 3D1.4 demonstrates that any one-for-one upward departure would be erroneous as a matter of law. Section 3D1.4 provides for offense-level increases of decreasing magnitude as the number of additional counts (or units) goes up. *See supra* note 1. Extrapolating from this structure, Szabo argues that the three counts not encompassed by the § 3D1.4 adjustment should justify an increase in his offense level of at most two levels, and probably only one level. *See Dawson*, 1 F.3d at 467 (Crabb, J., concurring). Szabo did not present this argument to the district court below, and we decline to consider it here in light of our decision to remand the Southern District and Eastern District cases for resentencing.

3. Accordingly, we dismiss Szabo's appeal in No. 97–3603.

Central District sentence were later reduced under Rule 35(b) of the Federal Rules of Criminal Procedure, or if the Central District sentence were subject to a successful collateral attack.

We recognize the likely possibility that Szabo may end up serving the same 97–month sentence (a seemingly lenient term considering the number of felonies involved) regardless of the resentencing in the Southern District and Eastern District cases. However, this possibility is not sufficiently definite to render further proceedings unnecessary. We therefore remand Nos. 97–3604 and 97–3605 to the able district judge for resentencing.