**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kevin Patrick SZABO, Defendant–
Appellant.**

Nos. 98–3367, 98–3368.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 28, 1998.[1]

Decided April 6, 1999.[2]

---

1. After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(a); Cir. R. 34(f).

2. This opinion has been circulated among all judges of this court in regular active service under Rule 40(e). No judge favored a rehearing en banc.

Thomas A. Keith (submitted), Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

David B. Mote (submitted), Office of the Federal Public Defender, Springfield, IL, for Defendant–Appellant.

Before BAUER, FLAUM and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Kevin Patrick Szabo appeals the sentence he received after pleading guilty to nine bank robberies. In particular, he challenges the district court's decision to depart upward pursuant to § 3D1.4 of the sentencing guidelines. For the reasons stated herein, we affirm.

## I. BACKGROUND

This court is reviewing Kevin Szabo's sentence for a second time, after having remanded his case for resentencing in *United States v. Szabo*, 147 F.3d 559 (7th Cir.1998) ("*Szabo I*"). Szabo was charged with, and eventually pled guilty to, nine bank robberies. Following the plea, the district court originally sentenced Szabo pursuant to USSG § 3D1.4, which provides the method for calculating the combined offense level when a defendant is convicted of multiple counts. This guideline states:

The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
|---|---|
| 1 | none |
| 1 < < | add 1 level |
| 2 | add 2 levels |
| 2 < <–3 | add 3 levels |
| 3 < <–5 | add 4 levels |
| More than 5 | add 5 levels |

In determining the number of units for purposes of this section:

(a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious.

.    .    .    .    .

USSG § 3D1.4.

Two of Szabo's robberies had adjusted offense levels of 25; each of the other seven robberies had an adjusted offense level of 24. Thus, the district court started with an adjusted offense level of 25—the highest possible offense level—and added five additional levels because the total number of robbery counts was "more than five." This resulted in an offense level of 30. From there, the district court decreased Szabo's offense level by three, because of his acceptance of responsibility, *see* USSG § 3E1.1, resulting in a total offense level of 27.

The district court then departed downward by three levels under USSG § 5K1.1 to reflect the substantial assistance Szabo provided to law enforcement authorities, bringing the offense level to 24. Finally, the district court departed upward by four levels, yielding a final offense level of 28, because it found that a combined offense level of 24 understated the seriousness of Szabo's offenses and that the grouping calculation in § 3D1.4 did not provide punishment for four of the nine robberies. Accordingly, the district court sentenced Szabo to 97 months imprisonment.

In his first appeal, Szabo challenged the imposition of the four level upward departure. He argued that the district court incorrectly concluded that § 3D1.4 included only five of the nine robberies and that four were left unpunished by the guidelines. We agreed with Szabo that the district court's upward departure was based on an incorrect understanding of § 3D1.4. *Szabo I*, 147 F.3d at 561. Based on the "more than five" language in the guideline, we found that the grouping adjustment at § 3D1.4 encompassed six of the nine robberies. Thus, the district court's conclusion that it accounted for only five of the robberies was in error. Accordingly, we remanded to the district court for resentencing.

Upon remand, the defendant argued that the seventh bank robbery conviction, like the sixth, was taken into account under the "more than five" language in the grouping provisions of § 3D1.4. He also argued that the district court should apply the upward departure for the eighth and ninth convictions based on a continuation of the grouping formula used for units one through five. According to Szabo's formula, he would be entitled to an upward departure of only one level. The district court rejected Szabo's arguments and gave him an upward departure of three levels, resulting in a new and reduced sentence of 87 months. Szabo now appeals.

## II. ANALYSIS

Szabo makes two arguments on appeal. First, he asserts that the district court erred as a matter of law when it considered his seventh bank robbery conviction in making the determination to depart upward. Second, he argues that the district court's decision to depart upward by three levels was unreasonable.

### A. Consideration of the seventh robbery.

We review interpretations of the sentencing guidelines de novo. *United States v. Gibson*, 155 F.3d 844, 845 (7th Cir.1998); *United States v. Dawson*, 1 F.3d 457, 461 (7th Cir.1993). Szabo asserts that the seventh robbery conviction should not have been included in the upward departure because it was already accounted for by the grouping rule in § 3D1.4.

In making this argument, he relies on *United States v. Valentine*, 100 F.3d 1209, 1212 (6th Cir.1996), in which the Sixth Circuit held that no upward departure beyond the five levels contemplated in § 3D1.4 was warranted for seven offenses. The *Valentine* court reached this conclusion by applying a precise mathematical continuation of the pattern used for offenses one through five. *Id.* at 1211. Under this interpretation, because the grouping rule of § 3D1.4 allowed only a one level upward departure for offenses 3.5 through 5, *see* USSG § 3D1.4, it is reasoned that only one level of increase would be allowable for offenses 5.5 through 7.

While recognizing the premise of this approach to the departure issue, we respectfully disagree with the Sixth Circuit's conclusion in *Valentine* that it is mandated by the guidelines. We find no such requirement that offenses beyond the first six must be sentenced according to the proscribed formula found in § 3D1.4. The only directive for upward departures beyond the first six offenses is contained in the commentary to § 3D1.4, which provides:

> Inasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units.

USSG § 3D1.4 (Application Notes). In our judgment, it is an "unusual case" when a defendant pleads guilty to a total of nine bank robberies. Such situation assessments dealing with the effect of a large number of felonies are appropriately committed to the sound discretion of the district court. Here, in a case with an extraordinary number of felonies, the district court explicitly rejected a continuation of

the base formula contained in § 3D1.4, and we find no error in that decision.

In Szabo's first appeal, we held that remand for resentencing was warranted because the district court incorrectly determined that § 3D1.4 accounted for only five of Szabo's bank robberies instead of six. This was consistent with our holding in *United States v. Dawson*, where we concluded that § 3D1.4 accounts for a sixth offense of conviction through the five level increase given for "more than five" offenses. 1 F.3d at 462.

We further noted in *Szabo I* that, "[i]f anything, the use of this one-to-one correlation suggests that the court would have departed upward by only three levels if it had correctly interpreted § 3D1.4 to account for all but three of Szabo's nine offenses." *Szabo*, 147 F.3d at 561. We did not indicate any unease with the district's imposition of an additional level of punishment for each of the robberies beyond the sixth, nor did we indicate that imposing one level of punishment for the seventh robbery was improper.

Therefore, in the context of this case, we do not find error with the district court's decision to impose additional punishment for robberies seven through nine. We see no reason to extend our holding in *Dawson*, that an upward departure for a sixth offense is improper, to a seventh offense.

## B. Reasonableness of three-level upward departure.

■■■ Szabo next argues that the district court's decision to depart upward by three levels was unreasonable. According to Szabo, the only reasonable approach would have been for the district court to extend the formula set forth at § 3D1.4. This court reviews the imposition of a sentence for an offense for which there is no guideline to determine if the sentence was "plainly unreasonable." 18 U.S.C. § 3742(a)(4). We "afford[ ] a deferential standard of review recognizing that sentencing judges should be given considerable leeway in determining the degree of departure." *United States v. Schmude,*

901 F.2d 555, 560 (7th Cir.1990). In determining the reasonableness of the departure, "some effort must be made to fashion the degree of departure to correspond to the number and the nature of the factors which warrant departure," *Id.* However, we will not substitute our judgment for that of the sentencing court. *Williams v. United States*, 503 U.S. 193, 205, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). Finally, we review the departure "to determine whether it was reasonable in light of the district court's explanations for its departure at the time of sentencing." *Schmude*, 901 F.2d at 558.

In the present case, there were no sentencing guideline procedures, other than the advisory language in the commentary cited above, to help the district court determine the appropriate degree of departure beyond the first six offenses. The district court explicitly rejected the continuation of the formula in § 3D1.4 urged by Szabo, finding that such an approach was neither required by the guidelines nor adequate to punish Szabo appropriately. It should be noted, even with the three level upward departure, Szabo only received a relatively light 87 month sentence for nine bank robbery convictions.

Szabo argues that because the district court's approach is not in step with the pattern contained in § 3D1.4, it is unreasonable, and that in order to be reasonable, any departure must conform to this schematic. We find that the defendant's argument misses the point of a departure. As the Sentencing Commission acknowledged in its application note:

> Situations in which there will be inadequate scope for insuring appropriate additional punishment for the additional crimes are likely to be unusual and can be handled by departure from the guidelines.

USSG § 3D1.4, comment. We conclude that this case presents the type of unusual circumstance described in the application note where the guidelines do not provide the appropriate additional punishment.

**934**

The district court departed upward three levels based on its belief that the circumstances warranted it. Neither the guideline nor its application note provides a required range of punishment for offenses beyond the first six.

Significantly, had the Sentencing Commission intended that any increase in offense level for multiple convictions beyond the sixth conviction must follow the pattern of § 3D1.4, it would have done so expressly. Instead of advising, as it did, that "[i]nasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units ...," the Commission would have instructed courts to repeat the scheme of level increases contained in § 3D1.4. The Commission specifically chose not to do this, stating:

> An alternative method for insuring more precise adjustments would have been to determine the appropriate offense level adjustment through a more complicated mathematical formula; that approach was not adopted because of its complexity.

*Id.*

Here, the defendant would have us read into the guideline a requirement that district courts adopt the type of intricate mathematical approach that was expressly rejected in favor of a discretionary determination by the district court. Given the commentary to the guidelines, the nature and number of Szabo's convictions, and the relative leniency of his overall sentence, we cannot conclude that the district court's decision to depart upward by three levels was unreasonable.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Szabo's sentence.