**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued October 14, 2009
Decided January 5, 2010

**Before**

JOHN L. COFFEY, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-3462

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| v. | |
| | No. 08-CR-34-C-02 |
| CARRIE WHEATON, *Defendant-Appellant*. | Barbara B. Crabb, *Chief Judge*. |

**ORDER**

Carrie Wheaton pleaded guilty to taking pornographic pictures of her twin five-year-old daughters.  The district court sentenced Wheaton to the statutory maximum of 30 years in prison.  Wheaton argues on appeal that the court failed to "meaningfully consider" evidence of her mental and psychological deficiencies or the goal of marginal deterrence. We affirm her sentence.

On at least two occasions in 2007 and 2008, Wheaton and her boyfriend, Roger Smith, took dozens of pornographic pictures of Wheaton's twin five-year-old daughters at

Wheaton's parents' home in Illinois.[*] Several of the pictures included Smith touching the girls with his penis or spreading their private areas with his hands. Before taking pictures, Wheaton gave cough syrup to the girls, who appeared to be asleep in all of the images. Smith took the camera's memory cards to Wisconsin, where, with Wheaton's consent, he e-mailed the pictures to others in his online chat group.

Wheaton pleaded guilty to one count of sexually exploiting the girls, 18 U.S.C. § 2251(a). Her base offense level was 32, U.S.S.G. § 2G2.1(a), with four additional levels for exploiting children under the age of 12, § 2G2.1(b)(1)(A), four levels for drugging the girls with cough syrup (conduct described in 18 U.S.C. § 2241(b)), § 2G2.1(b)(2)(B), two levels for sharing the images online, § 2G2.1(b)(3), two levels for being the parent of the victims, § 2G2.1(b)(5), five levels for engaging in a pattern of prohibited conduct, § 4B1.5(b)(1), and a two-level adjustment for the combined offenses against both girls, § 3D1.4. After a three-level reduction for acceptance of responsibility, § 3E1.1, her total offense level was 48. With a criminal history category of I, Wheaton's advisory guideline range was life in prison. The statutory maximum sentence for her offense, however, was 30 years in prison, 18 U.S.C. § 2251(e). Wheaton submitted a sentencing memorandum in which she requested a 20-year term of imprisonment. Among other arguments, she asserted that marginal deterrence demanded a sentence below the statutory maximum (so that worse offenders can receive a harsher punishment). She also attached an evaluation by Dr. Thomas Moran, a clinical psychologist, to support her request for a shorter sentence. Dr. Moran found that Wheaton had below-average cognitive functioning, but no actual disability, and that she was overly-trusting and easily manipulated by others.

At sentencing, Wheaton argued that intellectually she was very low functioning and Smith preyed on her vulnerability. The government responded that she was functional enough to graduate from community college, had abused the children before she met Smith, and participated in the offense for her own gratification. The district court found that Wheaton was weak-willed and lacked the self-discipline to keep herself from being a danger to the community. It agreed with the government that she committed the offense for reasons independent of Smith's and noted life imprisonment was "a real possibility." After acknowledging Wheaton's own abuse as a child and her history of mental health problems, the court recounted the details of her offense. It concluded that Wheaton's crime was "about as bad as it gets" and sentenced her to the statutory maximum of 30 years in prison and a lifetime term of supervised release.

---

[*]Wheaton finalized her divorce in September 2007 after starting a relationship with Smith. Her ex-husband had custody of the girls, and Wheaton had visitation with them every other weekend.

Wheaton first argues that the district court imposed an unreasonable sentence by failing to "meaningfully consider" her timely guilty plea or the findings in Dr. Moran's report. Specifically, she contends that her sentence does not account for her low mental functioning, her history of sexual abuse, and her low risk of re-offending, 18 U.S.C. § 3553(a)(1)-(2).

A district court need not comment on every argument a defendant raises, but if a sentencing court gives little or no attention to a defendant's principal argument, we may lack confidence that the court adequately considered the relevant factors. *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). On the other hand, "if anyone acquainted with the facts would have known without being told why the judge had not accepted the argument," then the court need not specifically comment. *Id.*

In this case, even though the court did not specifically refer to Dr. Moran's report, it made clear its belief that the psychological issues did not outweigh the disturbing nature of Wheaton's crime. First, the court acknowledged Wheaton's weaknesses, stating that she was "not a strong person," was "easily influenced [and] led astray," and was "highly dependent on having a man in [her] life," all factual conclusions from Dr. Moran's report. The court, however, did not believe that those factors alone contributed to her behavior, or that they mitigated her crime. The court noted that she admitted to sexual contact with her daughters before the incident with Smith and that she did so for her own gratification. The court also discussed Wheaton's experience of sexual abuse and her previous mental health problems, but noted that she was able to seek out help in the past. The court's conclusion that there were "no mitigating factors" does not mean that it did not consider the evidence, only that did not afford it the weight that Wheaton had hoped.

In addition, Wheaton does not explain in her brief why she has a low risk of re-offending, and in fact Dr. Moran came to the opposite conclusion: "She is currently at-risk for further exploitation, given the fact that she has started up a written correspondence with a male prison inmate in Wisconsin." And a timely plea is not a § 3553(a) factor; rather, Wheaton's guilty plea was the basis for her three-level adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1.

Wheaton next argues that her sentence at the statutory maximum is unreasonable because it leaves no room for a higher penalty to deter worse offenders. She asserts that, under the theory of marginal deterrence, "the harshest sentence should be reserved for the most culpable behavior." *United States v. Newsom*, 402 F.3d 780, 785-86 (7th Cir. 2005). She does not address the district court's rejection of her marginal deterrence argument: it found her crime "about as bad as it gets."

Arguing by analogy to other cases, Wheaton urges that her sentence was far longer than sentences imposed on other defendants whose sexual exploitation crimes were worse than her own. *Compare United States v. Schmeilski*, 408 F.3d 917 (7th Cir. 2005) (concurrent terms of 213 and 60 months in prison); *United States v. Jordan*, 435 F.3d 693 (7th Cir. 2006) (a statutory maximum term of 240 months in prison); *Newsom*, 402 F.3d 780 (324 months in prison); *United States v. Snyder*, 189 F.3d 640 (7th Cir. 1999) (168 months in prison). But the district court had discretion to disagree with other judges' decisions about the relative weight of various sex crimes, especially in light of Wheaton's applicable guideline range. Moreover, Wheaton's crime was different from the crimes committed by the defendants in *Schmeilski*, *Jordan*, *Newsom*, and *Snyder*, and subject to different guideline enhancements, *see* U.S.S.G. § 2G2.1(b). Unlike *Schmeilski*, 408 F.3d at 918, and *Jordan*, 435 F.3d at 694, Wheaton's victims were under 12 years old. Unlike those cases and *Newsom*, 402 F.3d at 781-82, Wheaton drugged the children. And unlike *Jordan*, 435 F.3d at 694, or *Snyder*, 189 F.3d at 643, and even unlike Smith, Wheaton was the parent of the victims. The district court focused specifically on her status as a parent when it rejected her marginal deterrence argument: "And when it involves your own children, it's just impossible to understand how someone could have done that." The court was within its authority to conclude that Wheaton's crime warranted the maximum authorized sentence.

Finally, we note that were it not for the 30-year statutory maximum, Wheaton could have received an even longer sentence. *See* 18 U.S.C. § 2251(e). Her original guideline range was life imprisonment, a sentence that the district court considered "a real possibility." Wheaton caught a break when she pleaded guilty to only one count, and the district court did not impose an unreasonable sentence.

AFFIRMED.