NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 19, 2012
Decided September 26, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

Nos. 12-1190 & 12-1191

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>TREVOR J. SHEA,<br>    *Defendant-Appellant.* | Appeals from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division.<br><br>Nos. 1:11CR00169-001 & 1:10CR00096-001<br><br>William T. Lawrence,<br>*Judge.* |

**O R D E R**

Trevor Shea captured live web images of girls as young as 13 exposing their breasts and, after using online resources to identify the girls, blackmailed them with threats to send the images to family and friends unless they sent him sexually explicit photos or performed sexually explicit acts in front of a webcam. His commands often were sadistic, and some of the girls were induced to participate in multiple webcam sessions, which Shea recorded. A 16-year-old victim from Indiana eventually alerted authorities, and Shea was charged with four counts of sexually exploiting her. *See* 18 U.S.C. § 2251(a). He was released pending trial but did not stop. He did the same thing to four more teens and was charged by information (under a different case number) with three additional counts (one involving two girls filmed together). In all, 10 minor girls in 8 states were induced to send Shea sexually explicit images, and in one instance he acted on his threats by sending images of a 15-year-old to

her boyfriend. Shea victimized more than a dozen other young women as well, though all were at least 18 years old. And he possessed a collection of child pornography involving prepubescent children.

Shea, who was 19 when arrested, pleaded guilty to all counts. At sentencing he withdrew his one objection to the probation officer's guidelines calculations, which the district court adopted without change. The court analyzed separately, under U.S.S.G. § 2G2.1, the charged counts plus Shea's relevant conduct involving other minor victims, *see id*. § 2G2.1(d). The court viewed as 13 independent "counts" the four original charges involving the 16-year-old from Indiana, the additional charges involving the four girls victimized while Shea was on pretrial release, and his uncharged blackmail of five other minors. *See id*. §§ 1B1.2(c), 2G2.1(d)(1), 3D1.2(d). For each count the court applied a base offense level of 32, *id*. § 2G2.1(a), and, for 11 of the 13 counts, added 4 levels on the understanding that the "offense" involved images of sadistic conduct, *id*. § 2G2.1(b)(4). In four instances the court added 2 levels because the victim was under age 16, *id*. § 2G2.1(b)(1)(B), and since Shea had sent a sexually explicit photo of one of those girls to her boyfriend, the court assessed on that count another 2 levels for distribution, *id*. § 2G2.1(b)(3). On all of the counts the court penalized Shea for committing the same crime while on pretrial release: For the violations committed before he was first arrested, the court added 2 levels for obstruction of justice, *id*. § 3C1.1, and for those committed after he was indicted, the court applied U.S.S.G. § 3C1.3, which mandates a 3-level increase for committing an offense while on pretrial release, *see* 18 U.S.C. § 3147. Then on the count with the highest adjusted offense level—42—the court added 5 levels because of the multiple violations, *see* U.S.S.G. §§ 3D1.1–4, and, finally, 5 more levels since Shea had engaged in a pattern of activity involving prohibited sexual conduct, *id*. § 4B1.5(b).

Based on these calculations, the district court arrived at a total offense level of 52 and a criminal history category of I, yielding a guidelines sentence of life in prison. The government recommended that Shea be given a small break because he had helped investigators identify the screen names of other blackmailers and revealed how he found information about his victims. *See* U.S.S.G. § 5K1.1. As reflected in separate judgments entered on the indictment and information, the court sentenced Shea to a total of 396 months: 360 months for each count of conviction, running concurrently, *see* 18 U.S.C. § 2251(e), plus a consecutive term of 12 months for each of those counts committed while on pretrial release, *see id*. § 3147. Shea filed a notice of appeal from the sentence in each case, and we have consolidated the two appeals. His appointed attorney (who also represented Shea in the district court) asserts that the appeals are frivolous and seeks to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Shea opposes this motion. *See* Cir. R. 51(b). We confine our review to the potential issues identified in counsel's facially adequate brief and Shea's response. *See United States v. Schuh*, 289 F.3d 968, 973–74 (7th Cir. 2002).

In his *Anders* brief counsel does not discuss any possible error in the district court's guidelines computations, but Shea has identified several possibilities, which we would review for plain error, *see United States v. Psihos*, 683 F.3d 777, 782 (7th Cir. 2012); *United States v. Corona-Gonzalez*, 628 F.3d 336, 340 (7th Cir. 2010). Though we agree with Shea that some of the guidelines calculations are questionable, an appeal based on those possible errors would still be frivolous because, all else being equal, the corrections he seeks would not change his guidelines sentence. And, in fact, the district court seems to have overlooked other upward adjustments that more than offset any mistakes in the government's favor.

Shea first considers challenging the 5-level increase for engaging in a pattern of activity involving prohibited sexual conduct, asserting that the increase does not apply to the specific crime he committed, but this argument would be frivolous. The increase applies when the defendant's crime is a "covered sex crime," the sexual conduct is "prohibited," and the conduct occurred on two or more instances. U.S.S.G. § 4B1.5(b)(1) & cmt. nn.2, 4. These requirements are met: Sexual exploitation of a minor is a covered sex crime, production of child pornography is prohibited sexual conduct, and he produced images of each victim on two or more occasions. *Id.* § 4B1.5 cmt. nn. 2, 4; *United States v. Schmeilski*, 408 F.3d 917, 920 (7th Cir. 2005); *United States v. Corp*, 668 F.3d 379, 391–92 (6th Cir. 2012).

Shea next proposes to argue that the district court should not have the applied the 4-level increase for sadistic content to 11 of the 13 counts because, he says, many of the images were not sadistic. *See* U.S.S.G. § 2G2.1(b)(4). He may be correct to an extent; his count of eleven goes too far, but from what we can tell from the record, five of the counts apparently did not involve sadistic or violent images. And since the 13 counts could not be grouped, *see* U.S.S.G. § 3D1.2(d), the sadistic conduct from the other counts arguably cannot be imputed to those five. *See id.* § 1B1.3; *United States v. Newsom*, 402 F.3d 780, 784 (7th Cir. 2005); *United States v. Fowler*, 216 F.3d 459, 461–62 (5th Cir. 2000). But the increase applies to enough counts that reducing by 4 the adjusted offense level for the others wouldn't change Shea's combined offense level. The count with the highest offense level—which is the starting point for determining the combined offense level, U.S.S.G. § 3D1.4—unquestionably involves images of violent or sadistic conduct. Although the increase mistakenly applied to some of the counts, in the end the 4-level increase would still apply to 8 of the 13 counts. That is enough to compel a 5-level multiple-count increase under § 3D1.4, which is the greatest increase that can be given. *See United States v. Szabo*, 176 F.3d 930, 932–33 (7th Cir. 1999); *United States v. Dawson*, 1 F.3d 457, 462 (7th Cir. 1993).

Shea next considers arguing that he should not have received a 2-level increase for obstructing justice on the counts involving blackmail committed before he was arrested and released on bond. Obstruction of justice is the willful impediment of the "investigation,

prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. It is not apparent how Shea's second set of crimes impeded his prosecution for the first; the probation officer had asserted in the presentence report that Shea's crimes obstructed justice but did not explain that conclusion, and neither the application notes nor case law suggests that the increase should apply in this situation. *See id.* cmt. n.4. Adjustments under other guidelines seem more appropriate: The court could withhold a reduction for acceptance of responsibility, or impose an above-guidelines sentence because the criminal history category underrepresents the seriousness of the defendant's criminal history and the likelihood that he would commit another crime. *See* U.S.S.G. §§ 3E1.1, 4A1.3(a)(2)(D); *United States v. King*, 506 F.3d 532, 536 (7th Cir. 2007); *United States v. Tai*, 41 F.3d 1170, 1176 (7th Cir. 1994). Additionally, that Shea committed crimes while on pretrial release is reflected by the 3-level increase applied to the second set of offenses. *See* 18 U.S.C. § 3147; U.S.S.G. § 3C1.3; *United States v. Royer*, 549 F.3d 886, 905 (2d Cir. 2008). So Shea could be right that the 2-level increase should not have been applied to the first set of offenses. But correcting this perceived error, even in combination with correcting the possible error regarding sadistic content, would still not affect Shea's guidelines range. Because of the way the grouping guidelines work, taking away the 4-level increase for sadism and 2-level increase for obstruction of justice for the appropriate counts would result in a combined offense level just 2 levels lower, for a total of 50. Any number greater than 42 will result in a guidelines sentence of life even for an offender with no criminal history, U.S.S.G. ch. 5, pt. A (sentencing table), so the possible errors discussed by Shea had no effect on his guidelines range.

Given this outcome we would not find plain error, and thus appellate challenges to the district court's application of § 2G2.1(b)(4) and § 3C1.1 would be frivolous. For completeness, though, we note that Shea's total offense level, even with the possible application errors, is probably understated. He used a computer to communicate directly with each of the victims and coerce them to engage in sexually explicit conduct, and so he should have received an increase of 2 levels for each of the counts. U.S.S.G. § 2G2.1(b)(6)(B)(i) & n.4(B); *United States v. Reaves*, 253 F.3d 1201, 1205 (10th Cir. 2001) (interpreting previous version of guideline); *United States v. Brown*, 237 F.3d 625, 628–29 (6th Cir. 2001) (same). And his demands that the victims touch themselves sexually and sadistically, and in one instance that a 15-year-old physically abuse her friend for Shea's gratification, warranted a 2-level increase for the commission of sexual contact. *See* U.S.S.G. § 2G2.1(b)(2)(A) & n.2; *United States v. Pawlowski*, 682 F.3d 205, 207–08, 211–13 (3d Cir. 2012); *United States v. Aldrich*, 566 F.3d 976, 979 (11th Cir. 2009); *United States v. Shafer*, 573 F.3d 267, 269, 277–78 (6th Cir. 2009).

All that remains is the length of Shea's overall sentence, and counsel considers whether Shea could argue that 33 years is unreasonable. But that term is significantly below the guidelines sentence and entitled to a presumption of reasonableness. *See Rita v. United*

*States*, 551 U.S. 338, 347 (2007); *United States v. Pape*, 601 F.3d 743, 746 (7th Cir. 2010). Counsel has not identified any basis to set aside that presumption, nor can we. Looking to the factors in 18 U.S.C. § 3553(a), the district court acknowledged that Shea was relatively close in age to the victims, but emphasized the seriousness of the offenses, Shea's lack of compassion toward his victims, and the need to protect the public.

Shea considers impugning the performance of his attorney (despite having sung counsel's praises during sentencing). He asserts that his attorney refused to object to the guidelines calculations on the grounds discussed in his Rule 51(b) response, did not provide him enough time to review the final version of the presentence report, and failed to provide a letter for the district judge to weigh at sentencing. What matters is counsel's overall performance, *see Bland v. Hardy*, 672 F.3d 445, 451 (7th Cir. 2012); *Atkins v. Zenk*, 667 F.3d 939, 945 (7th Cir. 2012), and we can envision a lawyer bypassing some objections that, as in this case, could prompt the government to look more closely at other adjustments apparently overlooked by the probation officer. In any event, if there is a ground for questioning the quality of counsel's assistance, that claim would be more appropriately pursued in a collateral proceeding where a factual record could be developed. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Persfull*, 660 F.3d 286, 299 (7th Cir. 2011). And certainly Shea's current lawyer cannot be expected to challenge his own performance. *See United States v. Rezin*, 322 F.3d 443, 445 (7th Cir. 2003).

The motion to withdraw is **GRANTED**, and the appeals are **DISMISSED**.